## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>MARK D. THOMPSON and<br>HEATHER A. THOMPSON,<br>    Debtors<br><br>CAROLYN A. BANKOWSKI, TRUSTEE,<br>    Plaintiff<br>v.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY, as TRUSTEE FOR MORGAN STANLEY ABS CAPITAL I INC TRUST 2005-HE1, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2005-HE1<br>   .    Defendant. | Chapter 13<br>Case No 10-21963-WCH<br><br>Adversary Proceeding No._____ |

## **COMPLAINT**

Now comes Carolyn A. Bankowski, Standing Chapter 13 Trustee and for her complaint to Avoid the Lien pursuant to 11 U.S.C. §544 states as follows:

**I.     Introduction**

1.     This Complaint seeks to avoid the defective mortgage lien held by the Defendant on the Debtor/Plaintiff's Real Estate.

2.     This action seeks to modify the Proof of Claim filed by the Defendant from secured to general unsecured, and to enforce the terms and provisions of the confirmed plan pursuant to 11 U.S.C. §1327.

**II.     Jurisdiction and Venue**

3.     Jurisdiction is conferred on this Court pursuant to the provisions in Section 1344 of Title 28 of the United States Code in that this proceeding arises in and is related to the above captioned Chapter 13 case under Title 11 and concerns property of the debtor in that case.

    4.       This is a core proceeding under 28 U.S.C. §157(b)(2)(B), (G), (K) and (O).

**III.    Standing**

    5.       Pursuant to 11 U.S.C. §§323(a), 323(b), 362, 544, 1302(b), 1322(a)(1), 1325(a)(2), 1325(c), 1327(a) and 1328(a), specifically the Trustee's duties to distribute payments in accordance with the confirmed plan and to be accountable for all property received, the Trustee has standing to file this Complaint.

**IV.    General Allegations**

    6.       The plaintiff Carolyn A. Bankowski ("Trustee") is the Standing Chapter 13 Trustee for the District of Massachusetts Eastern Division, with an office located at 98 North Washington Street, Suite 300, Boston, MA 02114.

    7.       The Trustee is bringing this action pursuant to the Trustee's avoidance powers found under 11 U.S.C. §544.

    8.       That on or about October 31, 2010, the Debtors filed their petition for relief under Chapter 13 of the United States Bankruptcy Code.

    9.       That the Debtors are owners of real property located at 5 Hermitage Road in Marion, MA ("the property").

    10.       That Deutsche Bank Nation Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1 ("Deutsche Bank") is a party to this action by virtue of the fact that it claims to have a mortgage on the Property pursuant to the mortgage documents attached to the Proof of Claim filed by American Home Mortgage Servicing, Inc. as servicer for Deutsche Bank.

    11.       That on November 18, 2010, American Home Mortgage Servicing, Inc. as servicer for Deutsche Bank filed a Proof of claim in the above-captioned bankruptcy case in the

amount of $156,910.96 ("the Debt"). In the claim, Deutsche Bank indicated that it was a secured creditor and attached a note and mortgage for the Property. The note and mortgage are in the name of Option One Mortgage Corporation, and the Proof of Claim includes a Notice of Acquisition of Option One Mortgage Corporation by American Home Mortgage Servicing, Inc. and a statement that American Home Mortgage Servicing, Inc. would service the mortgage as of May 15, 2008. (A copy of the Proof of claim and all attachments is attached hereto as Exhibit "A"). Deutsche Bank has also produced an Assignment of Mortgage from Sand Canyon Corporation, formerly known as Option One Mortgage Corporation to Deutsche Bank dated May 4, 2011. (A copy of the Assignment of Mortgage is attached here to as Exhibit "B").

12. That the Trustee has determined after a review of the mortgage documents that the notary acknowledgement for the Mortgage attached to the Proof of Claim fails to contain a specific reference to the Debtors as the persons who personally appeared before the notary, which is a material defect that should have prevented the Mortgage from being recorded. *See* In re Giroux, 2009 Bankr. LEXIS 3429 (Bankr. D. Mass. May 21, 2009), *affirmed* 2009 U.S. Dist. LEXIS 106872 (D. Mass. November 17, 2009); In re Bower, 2010 Bankr.LEXIS 3641 (Bankr. D. Mass. October 13, 2010); *Motion for Leave to Appeal denied* 2011 U.S. Dist. LEXIS 78465 (U.S.D.C. 1st Cir. July 18, 2011); *Summary Judgment granted* 462 B.R. 347 (Bankr.D.Mass. January 4, 2012).

### Count I
### MOTION TO AVOID LIEN

13. The Trustee repeats and re-avers the allegations set forth in paragraphs one through twelve of the Complaint as if fully stated herein.

3

14. That attached to this Complaint as Exhibit "A," and incorporated herein by reference, are true and correct copies of the Note, Mortgage, and Notice of Acquisition held by Deutsche Bank on the Property.

15. That under Massachusetts law, the Mortgage contains a material defect which should have prevented it from being recorded.

16. Therefore, the Mortgage held by Deutsche Bank should be voided by this Court pursuant to 11 U.S.C. §544 and the Debtors should be declared to take the Property free and clear of the defective Mortgage lien.

WHEREFORE, the Trustee respectfully requests that this Court order pursuant to 11 U.S.C. §544, that the defective Mortgage and whatever lien held by Deutsche Bank be avoided and grant such other relief as this Court deems proper.

## COUNT II
## MOTION TO DEEM DEFENDANT AS UNSECURED CREDITOR

17. The Trustee repeats and re-avers the allegations set forth in paragraphs one through sixteen of the Complaint as if fully set forth herein.

18. That on November 18, 2010, American Home Mortgage Servicing, Inc. as servicer for Deutsche Bank filed a Proof of claim in the above-captioned bankruptcy case in the amount of $156,910.96 ("the Debt"). In the claim, Deutsche Bank indicated that it was a secured creditor and attached a note and mortgage for the Property. The note and mortgage are in the name of Option One Mortgage Corporation, and the Proof of Claim includes a Notice of Acquisition of Option One Mortgage Corporation by American Home Mortgage Servicing, Inc. and a statement that American Home Mortgage Servicing, Inc. would service the mortgage as of May 15, 2008.

4

19. That the Trustee has determined after a review of the mortgage documents that the notary acknowledgement for the Mortgage attached to the Proof of Claim fails to contain a specific reference to the Debtors as the persons who personally appeared before the notary, which is a material defect that should have prevented the Mortgage from being recorded. *See* In re Giroux, 2009 Bankr. LEXIS 3429 (Bankr. D. Mass. May 21, 2009), *affirmed* 2009 U.S. Dist. LEXIS 106872 (D. Mass. November 17, 2009); In re Bower, 2010 Bankr.LEXIS 3641 (Bankr. D. Mass. October 13, 2010); *Motion for Leave to Appeal denied* 2011 U.S. Dist. LEXIS 78465 (U.S.D.C. 1st Cir. July 18, 2011); *Summary Judgment granted* 462 B.R. 347 (Bankr.D.Mass. January 4, 2012).

20. That the Proof of Claim attached hereto as Exhibit "A" should be disallowed as a secured claim and deemed an unsecured claim in the amount of $271,606.96.

WHEREFORE, the Trustee respectfully requests that the Proof of Claim filed by Deutsche Bank be disallowed as a secured claim and deemed an unsecured claim.

## COUNT III
## MOTION FOR TURNOVER (FUNDS PAID BY TRUSTEE)

21. The Trustee repeats and re-avers the allegations set forth in paragraphs one through twenty of the Complaint as if fully set forth herein.

22. That prior to the determination that Deutsche Bank did not have a valid lien on the Property, the Trustee paid $3,058.73 to Deutsche Bank pursuant to the confirmed Chapter 13 Plan.

23. That Deutsche Bank is not entitled to the funds paid by the Trustee as Deutsche Bank does not have a valid security interest in the Property.

## COUNT IV
## MOTION FOR TURNOVER (FUNDS PAID BY DEBTORS) AND REQUEST FOR ACCOUNTING

24. The Trustee repeats and re-avers the allegations set forth in paragraphs one through twenty-three of the Complaint as if fully set forth herein.

25. That prior to the determination that Deutsche Bank did not have a valid lien on the Property, the Debtors continued to make post-petition mortgage payments directly to Deutsche Bank in the approximate amount of $1,970.00, as evidenced by the monthly mortgage expense listed by the Debtors on schedule J.

26. That Deutsche Bank is not entitled to the funds paid by the Debtors as Deutsche Bank not have a valid security interest in the Property.

WHEREFORE, the Trustee respectfully requests that the Court order Deutsche Bank to provide a complete accounting of all funds paid by the Debtors to Deutsche Bank since the filing date for post-petition mortgage payments, and order Deutsche Bank to turn over the total amount paid by the Debtors for post-petition mortgage payments since the filing date to the Trustee for redistribution to creditors.

Dated: April 6, 2012

Respectfully submitted,

Carolyn A. Bankowski
Standing Chapter 13 Trustee
By: /s/ Patricia A. Remer
Carolyn A. Bankowski (BBO #631056)
Patricia A. Remer (BBO#639594)
Office of the Chapter 13 Trustee
PO Box 8250
Boston, MA 02114
(617) 723-1313
13trustee@ch13boston.com

# EXHIBIT A

B 10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT DISTRICT OF MASSACHUSETTS, EASTERN DIVISION | PROOF OF CLAIM |
|---|---|
| Name of Debtor: Mark D. Thompson | Case Number: 10-21963-WCH |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2005-HE1, Mortgage Pass-Through Certificates, Series 2005-HE1 | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>American Home Mortgage Servicing, Inc<br>1525 S. Beltline Road, Suite 100 N<br>Coppell, Texas 75019 | Court Claim Number: _____<br>*(If known)*<br><br>Filed on: |
| Name and address where payment should be sent (if different from above):<br>American Home Mortgage Servicing, Inc<br>1525 S. Beltline Road, Suite 100 N<br>Coppell, Texas 75019<br><br>Telephone Number: (800) 704-0800 | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

1. Amount of Claim as of Date Case Filed: $156,910.96

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim: Money Loaned
   (See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: xxxxxx5992

   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   Nature of property or right of setoff:  ☒ Real Estate  ☐ Motor Vehicle  ☐ Other: _____
   Describe: 5 Hermitage Rd, Marion, Massachusetts 02738-1301

   Value of Property: not available     Annual Interest Rate:

   Amount of arrearage and other charges as of time case filed included in secured claim,

   if any: $8,650.12  Basis for perfection: Recordation of Lien

   Amount of Secured Claim: $156,910.96   Amount Unsecured: $0.00

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)( ___ ).

Amount entitled to priority:
$ _____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date:<br>November 17, 2010 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>/s/ Lawrence J. Buckley as Creditor's Authorized Agent    P.O. Box 829009<br>972.643.6600                                                                                             Dallas, TX 75382-9009 | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

7419-N-2888

Date: 08/20/04

# NOTE

**CERTIFIED COPY**

6 HERMITAGE ROAD, MARION, MA 02738-1301
[Property Address]

1. **BORROWER'S PROMISE TO PAY**

   In return for a loan that I have received, I promise to pay U.S. $162,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
   Option One Mortgage Corporation, a California Corporation
   I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**

   Interest will be charged on unpaid principal until the full amount of principal has been paid. Interest will be calculated on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of 5.500%.

   The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

3. **PAYMENTS**

   (A) Time and Place of Payments

   I will pay principal and interest by making payments every month.

   I will make my monthly payments on the first day of each month beginning on October 01, 2004. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on September 01, 2034, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

   I will make my monthly payments at OPTION ONE MORTGAGE CORPORATION
   P.O. BOX 92103 LOS ANGELES, CA 90009-2103     or at a different place if required by the Note Holder.
   (B) Amount of Monthly Payments
   My monthly payment will be in the amount of U.S. $919.82
   (C) Application of Payments

   Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

4. **BORROWER'S RIGHT TO PREPAY**

   I have the right to make payments of principal at any time before they are due, together with accrued interest. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

   If within 36 Months from the date of execution of the Security Instrument I make a full prepayment or a partial prepayment, I will at the same time pay the Note Holder a prepayment charge. If I make a prepayment within the first year, for any reason, I will be required to pay the lesser of the balance of the first year's interest, or three (3) months' interest on the amount prepaid, computed at the interest rate in effect at the time of prepayment.

   Notwithstanding the foregoing, however, if I make a prepayment within the first year for the purpose of refinancing the loan with another financial institution, I will be required to pay an additional three (3) months' interest on the amount prepaid, computed at the interest rate in effect at the time of prepayment. If the loan is prepaid by refinancing with another financial institution from the 13 month to 36 Month, the maximum penalty will be three (3) months' interest computed at the interest rate in effect at the time of prepayment. In no event will such a charge be made unless it is authorized by state or federal law.

5. **LOAN CHARGES**

   If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**

   (A) Late Charge for Overdue Payments

   If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 3.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

   (B) Default

   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument.

   (C) No Waiver By Note Holder

   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

MASSACHUSETTS FIXED RATE NOTE - Single Family
Page 1 of 2                                                                                            MANTD011.wp (12-21-01)

Date: 08/20/04

(D) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MARK D THOMPSON                -Borrower
SSN:

_____ (Seal)
HEATHER A THOMPSON             -Borrower
SSN:

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower
SSN:

_____ (Seal)
                               -Borrower
SSN:

_____ (Seal)
                               -Borrower
SSN:

(Sign Original Only)

Page 2 of 2                                                MAHT0032.sp (12-03-01)

WHEN RECORDED MAIL TO:
OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096

ATTN: RECORDS MANAGEMENT

CERTIFIED COPY

[Space Above This Line For Recording Data]

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on August 20, 2004. The mortgagor is MARK D THOMPSON AND HEATHER A THOMPSON

("Borrower"). This Security Instrument is given to
Option One Mortgage Corporation, a California Corporation
which is organized and existing under the laws of CALIFORNIA, and whose address is
3 Ada, Irvine, CA 92618
("Lender"). Borrower owes Lender the principal sum of
ONE HUNDRED SIXTY TWO THOUSAND
AND NO/100THS Dollars (U.S. $162,000.00).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on September 01, 2034. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in Plymouth County, Massachusetts:
12-10

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

which has the address of 5 HERMITAGE ROAD, MARION [Street, City]

Massachusetts 02738-1301 ("Property Address");
(Zip Code)

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

MASSACHUSETTS - Single Family
Page 1 of 6
MA010011 (02-27-04)

MD HT

Date: 08/20/04

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

Page 2 of 6

MAD1002R (02-27-04)

*NOT WT*

Date: 08/20/04

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise, to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument: (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to

Page 3 of 6

MAD30010 (02-27-00)

HT
HOT

Date: 06/20/04

commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. Transfer of the Property or Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

Page 4 of 6

MAD10014 (03-27-04)

HOT HT

Date: 08/20/04

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter exercise the statutory power of sale and/or any other remedies or take any other actions permitted by applicable law. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

23. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

24. Misrepresentation and Nondisclosure. Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

25. Time is of the Essence. Time is of the essence in the performance of each provision of this Security Instrument.

26. Waiver of Statute of Limitations. The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

27. Modification. This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

28. Reimbursement. To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

29. Clerical Error. In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to re-execute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

30. Lost, Stolen, Destroyed or Mutilated Security Instrument and Other Documents. In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

31. Assignment of Rents. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security Instrument and Borrower has not abandoned the Property.

32. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

Page 5 of 6

HT
HDT

MAD10015 (02-27-04)

Date: 08/20/04

[Check applicable box(es)]

☐ Adjustable Rate Rider           ☐ Condominium Rider              ☐ 1-4 Family Rider
☐ No Prepayment Penalty Option Rider   ☐ Planned Unit Development Rider   ☐ Occupancy Rider
☐ Other(s) (specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____     _____(Seal)
                                                                      -Borrower

_____     _____(Seal)
                                                                      -Borrower

_____/s/ Mark P Thompson_____(Seal)   _____(Seal)
MARK P THOMPSON          -Borrower                                    -Borrower

_____/s/ Heather A Thompson____(Seal)   _____(Seal)
HEATHER A THOMPSON       -Borrower                                    -Borrower


COMMONWEALTH OF MASSACHUSETTS,     Norfolk           County ss:

On this   20   day of   August, 2004   , before me, the undersigned notary public, personally appeared

proved to me through satisfactory evidence of identification, which was/were   Mass Drivers License
to be the person(s) whose name(s) is signed on the preceding document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

My Commission Expires: 5/23/09
(Seal)

_____
Notary Public
Steven L. Schub

Page 6 of 6                                                          MA01006 (02-27-04)

MPT



Jordan D. Dorchuck
Executive Vice President & Chief Legal Officer
American Home Mortgage Servicing, Inc.
4600 Regent Boulevard, Suite 200
Irving, Texas 75063

May 15, 2008

To Whom It May Concern:

Re: Acquisition of the Mortgage Servicing Business of Option One Mortgage Corporation by American Home Mortgage Servicing, Inc.

Ladies and Gentlemen:

The purpose of this letter is to inform you that, effective as of April 30, 2008, American Home Mortgage Servicing, Inc. ("American Home") completed its acquisition of substantially all of the assets constituting the residential mortgage servicing business of Option One Mortgage Corporation ("Option One"). In connection with this acquisition, American Home:

1. became the successor servicer or subservicer to Option One under each of the continuing residential mortgage servicing agreements under which Option One previously served as the servicer, subservicer or master servicer;

2. acquired the ownership of and right to use the "Option One" name and related trademarks in connection with the continued servicing of residential mortgage loans;

3. hired a substantial majority of the employees of Option One who were engaged in Option One's residential mortgage servicing business;

4. assumed or subleased facilities of Option One's residential mortgage servicing business in Irvine, California; Jacksonville, Florida; Las Vegas, Nevada; and Pune, India; and

5. purchased and assumed all other contractual rights and obligations of Option One that primarily relate to its residential mortgage servicing business.

Please direct all future correspondence relating to the residential mortgage servicing business previously operated by Option One to American Home at the address listed above, and feel free to contact Robert Love at 214-260-6804 with any questions you may have about the acquisition.

Thank you for your cooperation.

Sincerely,

Jordan D. Dorchuck
Executive Vice President & Chief Legal Officer
American Home Mortgage Servicing, Inc.

DAL:0294601\03\3D4011.DOC\1531.0015

# EXHIBIT B

Prepared by and return to:
Ablitt|Scofield, P.C.
304 Cambridge Road
Woburn, MA 01801
File No.: C96.0306-BK

The area above this line is for the use of recording official

## ASSIGNMENT OF MORTGAGE

Sand Canyon Corporation, formerly known as Option One Mortgage Corporation ("Assignor"), which is organized and existing under the laws of United States of America, in consideration from Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2005-HE1, Mortgage Pass-Through Certificates, Series 2005-HE1 ("Assignee"), c/o American Home Mortgage Servicing, Inc., 1525 S. Beltline Road, Coppell, TX 75019, has granted, bargained, sold, assigned, transferred and set over, and by these presents does grant, bargain, sell, transfer and set over unto Assignee the following described Mortgage(s) recorded in the Plymouth County Registry of Deeds, State of Massachusetts, together with the note of obligation described in said Mortgage(s), and the money due and to become, due thereon, with interest as therein provided.

| | |
|---|---|
| Mortgage Date: | August 20, 2004 |
| Original Mortgagee: | Option One Mortgage Corporation |
| Original Mortgagors: | Mark D. Thompson and Heather A. Thompson |
| Recording Date: | August 26, 2004 with the Plymouth County Registry of Deeds |
| | Book: 28938   Page: 76 |
| Property Address: | 5 Hermitage Road, Marion, Massachusetts 02738 |

IN WITNESS WHEREOF, Sand Canyon Corporation, formerly known as Option One Mortgage Corporation, has caused these presents to be signed by its duly authorized officer and its corporate seal to be hereunto affixed, this 4th day of May, 2011

C96.0306

IN THE PRESENCE OF:

Sand Canyon Corporation, formerly known as Option One Mortgage Corporation

Witness: *Dawn Higginbotham*
Dawn Higginbotham

Name: *Elizabeth Boulton*
Elizabeth Boulton

Title: **Vice President**

STATE OF _____Florida_____
County of _____Duval_____

On __MAY 4 2011__ before me, __LUBICA V. SIMON__ personally appeared __Elizabeth Boulton__ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC SIGNATURE

LUBICA V SIMON
MY COMMISSION # EE063165
EXPIRES April 11, 2015
(407) 398-0153   FloridaNotaryService.com

NOTARY PUBLIC SEAL